1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VIVECA SANAI, an individual, CYRUS
SANAI, an individual, FREDRIC SANAI, an
individual, INGRID SANAI BURON, an
individual, and DARIA SANAI, an
individual,

                 Plaintiffs,

v.

SASSAN SANAI, an individual, MARY
LYNN McCULLOUGH, an individual,
INTERNAL MEDICINE & CARDIOLOGY,
INC., a Washington corporation, and DOES 1
through 10,

                 Defendants.

_____

CYRUS SANAI, an individual, and
FREDRIC SANAI, an individual,

                 Plaintiffs,

v.

SASSAN SANAI, an individual, MARY
LYNN McCULLOUGH, an individual,
INTERNAL MEDICINE & CARDIOLOGY,
INC., a Washington corporation, WILLIAM
SULLIVAN, an individual, and MARSH
MUNDORF PRATT SULLIVAN AND
MCKENZIE, a partnership,

                 Defendants.

No.  C02-2165Z

ORDER

ORDER -  1

# I. NATURE OF MOTION

Defendants filed a three-part joint motion for summary judgment on December 2, 2004.  See Mot. for Summ. J. by IMC, docket no. 605; Mot. for Summ. J. by Mary McCullough, docket no. 610; Mot. for Summ. J. by Sassan Sanai, docket no. 615.  The motions were noted for December 24, 2004.  Pursuant to Local Rule 7(d)(3), any Opposition was due by December 20, 2004.[1]  Plaintiffs filed an ex parte motion to extend the briefing schedule, which was denied.  Plaintiffs did not file their Opposition briefing in a timely manner as required by Local Rule 7(d)(3).

## A.   Plaintiffs' Untimely Responsive Briefing

Plaintiffs untimely filed a partial Opposition on December 23, 2004, blaming the Court for their untimely filing.  See Opp. to Summ. J., docket no. 626, at 1.  Plaintiffs disregarded the Court's Order denying their request for an extension of time.  See Minute Order, docket no. 625.  Defendants filed a Reply regarding procedural issues on December 23, 2004, which included a motion to strike Plaintiffs' untimely Opposition briefing. Defendants also noted that Plaintiffs had failed to file any response or opposition to the summary judgment motion of Sassan Sanai.  On December 24, 2004, Plaintiffs filed a late Opposition to Sassan Sanai's motion for summary judgment.

Defendants' motion to strike has merit.  However, even if the Court granted the motion to strike, a complete and thorough evaluation of Defendants' Motions for Summary Judgment would be required.  See Nilsson v. Louisiana Hydrolec, 854 F.2d 1538, 1545 (9th Cir. 1988).  The Court DENIES Defendants' Motion to Strike, docket no. 627.

---

[1] Local Rule 7(b)(2) of the Western District of Washington provides that failure to file papers in opposition may be deemed by the Court as an admission that the motion has merit. The Court has previously notified Plaintiffs of the existence and consequences of this provision. See Minute Order, docket no. 594, at 2 (failure to respond to motion deemed an admission the motion has merit under Local Rule 7(b)(2)); see also Minute Order, docket no. 641, at 2 (striking untimely responsive pleadings).

ORDER - 2

**B.     Plaintiffs' Supplemental Filing**

On December 27, 2004, after the noting date, Plaintiffs submitted a "supplemental" Opposition brief, docket no. 630, which (1) presented argument as to Defendant McCullough's request for fees (Plaintiffs failed to argue this in their Opposition); (2) responded to the motion to strike; and (3) argued that Plaintiffs' sixth and seventh causes of action, previously dismissed on summary judgment, should continue under a new legal theory.  Plaintiffs' "supplemental" Opposition is improper.  The rules do not allow a party to continually file responsive pleadings until they respond to all issues.  However, rather than strike Plaintiffs' supplemental Opposition, the Court will address the issues raised.  The Court DENIES without prejudice Defendants request for attorneys' fees.

Plaintiffs argue they are entitled to "switch[] the basis of their [sixth and seventh causes of action] to Washington State law," citing Crull v. GEM Ins. Co., 58 F.3d 1386, 1391 (9th Cir. 1995).  Plaintiffs' sixth and seventh causes of action were dismissed on summary judgment more than a year ago.  See Order, docket no. 329.  Plaintiffs represent that Crull stands for the proposition that a "plaintiff may change [its] legal theory at any time."  See Supp. Opp., docket no. 630, at 4.  The Court does not agree.  In Crull, the alternative theory was presented as an alternative basis for relief if the district court found the state law claims preempted.  In that context, the reviewing court found error where the district court did not consider ERISA as an alternative basis for relief.  Crull, 58 F.3d at 1391.  The circumstances here are substantively different.

Plaintiffs sixth and seventh causes of action were dismissed in 2003.  More than a year later, on the eve of trial, after the close of discovery, and after the dispositive motions deadline, Plaintiffs seek to adopt a new legal theory.  Plaintiffs concede that a change in theory is not permissible where the opponent would be prejudiced on the merits.  See Hanson v. Hoffman, 628 F.2d 42, 53 (D.C. Cir. 1980).  Defendants would be prejudiced on the merits if Plaintiffs were allowed to resurrect these claims after a lengthy period of delay.

1    Plaintiffs suggestion that Defendants be allowed more discovery to account for Plaintiffs'

2    dilatory conduct is rejected.  Plaintiffs' request would be unduly prejudicial and is DENIED.

3    ## II.  BACKGROUND

4        This lawsuit arises from the failed marriage of Sassan Sanai and Viveca Sanai.  The

5    lawsuit is brought by Plaintiffs Viveca Sanai (mother), Cyrus Sanai (eldest son), Fredric

6    Sanai (son), Ingrid Sanai (daughter), and Daria Sanai (daughter).  See Third Am. Compl.,

7    docket no. 145, at ¶¶ 3-7.  The lawsuit asserts numerous causes of action against Defendants

8    Sassan Sanai (father), Mary Lynn McCullough (employee of father's business), Internal

9    Medicine & Cardiology ("IMC") (father's business), William Sullivan (father's former

10   attorney), and Marsh, Mundorf, Pratt, Sullivan, and McKenzie (father's former attorney's

11   law firm).  Id. at ¶¶ 8-12.  The majority of Plaintiffs' causes of action stem from events

12   surrounding the divorce of Viveca Sanai and Sassan Sanai.

13       Sassan Sanai and Viveca Sanai were married for more than 41 years; their marriage

14   ended in April 2002.  Third Am. Compl., docket no. 145, at ¶ 16.  The Sanai divorce made

15   its way through the Washington State court system, with active involvement by various

16   family members.  Plaintiff Fredric Sanai obtained his license to practice law in Washington

17   for the purpose of representing his mother.  See Ex. S to Application for Writ of Attachment,

18   docket no. 9, at 2 (Order on Show Cause).  Plaintiff family members here bring claims for

19   (1) wiretapping under 18 U.S.C. § 2511; (2) invasion of privacy under state and federal law;

20   (3) wiretapping under California law; (4) wiretapping under Oregon law; (5) negligent

21   infliction of emotional distress under Washington law; (6) libel under California law; (7)

22   slander under California law; (8) breach of contract; (9) libel under Washington law; (10)

23   slander under Washington law; (11) tortious interference with business expectancy; (12)

24   invasion of privacy, harassment, and stalking; (13) unlawful disclosure of medical records;

25   (14) public disclosure of private facts; (15) medical malpractice; (16) partition of real

26

1  property and quiet title; and (17) violations of E.R.I.S.A.  See Third Am. Compl., docket no.

2  145.

3       For the various causes of action asserted against Sassan Sanai, Mary McCullough,

4  Internal Medicine & Cardiology, and Sassan Sanai's former attorneys, Plaintiffs sought

5  damages of approximately $16,744,200.  A majority of the claims asserted in the Third

6  Amended Complaint have been dismissed, and Plaintiffs' claims have been narrowed to six.

7  Those six claims are asserted against Sassan Sanai, Mary McCullough, and Internal

8  Medicine & Cardiology, and consist generally of three categories: (a) wiretapping/invasion

9  of privacy; (b) libel/slander; and (c) invasion of privacy, harassment, and stalking.

10       **A.       Wiretapping/Invasion of Privacy.**

11       Plaintiffs' first, second, and fourth causes of action allege that Sassan Sanai, as well

12  as his medical practice, Internal Medicine & Cardiology, and employee Mary McCullough,

13  engaged in wiretapping activities in violation of state and federal law.  See Third. Am.

14  Compl., docket no. 145, at ¶ 20.  Plaintiffs allege that these wiretapping activities began in

15  1993, or in 1987.  Id. at ¶ 20; see also Ex. B to Opp. to Summ. J., at ¶ 17 (Daria Sanai Decl.).

16  Plaintiffs allege that they only became aware of the alleged wiretapping in December of

17  2000.  Plaintiff Cyrus Sanai alleges that Sassan Sanai bragged about his wiretapping of

18  Viveca and the other Plaintiffs on December 23, 2000.  See Ex. B to Opp. to Summ. J.,

19  docket no. 626, at ¶ 13 (Cyrus Sanai Decl.).  Judge Palmer Robinson of King County

20  Superior Court found that Plaintiff Daria Sanai was aware of alleged taping in 1987.  See Ex.

21  S to Application for Writ of Attachment, docket no. 9, at 4 (Order on Show Cause).  Daria

22  states that it was only after hearing of her father's "confession" to Cyrus Sanai, on or about

23  December 23, 2000, that she realized the tapes she was aware of were, in fact, wiretap tapes.

24  See Ex. B to Opp. to Summ. J., at 37-38 (Daria Sanai Decl.).

25       Plaintiffs claim that Sassan "wiretapped the family residence through December of

26  2000, at which time his activities were revealed."  See Ex. A to Opp. to Summ. J., at 21

1   (Cyrus Sanai Decl.).  The genesis of Plaintiffs' claims was the alleged confession of Sassan

2   Sanai on December 23, 2000, to Plaintiff Cyrus Sanai.

3       Cyrus Sanai's declaration states that "[o]n or about December 23rd, 2002,"[2] Cyrus

4   Sanai met with Sassan at the family residence where Sassan ". . . bragg[ed] about his

5   wiretapping of Viveca and the other Plaintiffs."  Id. at 22.  Cyrus Sanai further states that

6   "[December 23, 2000] was the first time Cyrus learned of any facts regarding Sassan's

7   wiretapping activities," and that none of the Plaintiffs were aware of alleged wiretapping by

8   Sassan Sanai until he informed them of his conversation with Sassan.  Id. at 22-23.

9       Notwithstanding the fact that Plaintiffs' action is based on accusations of wiretapping,

10  Plaintiffs illegally wiretapped their father, in violation of Washington law, during this

11  litigation in order to prove that he wiretapped them.  Plaintiffs freely admit that they

12  wiretapped their father.  See Ex. B to Opp. to Summ. J., at ¶ 4 (Daria Sanai Decl.).  Plaintiffs

13  arranged to record phone conversations with Sassan Sanai with the assistance of an off-duty

14  detective from Yamhill County, Oregon, Russ Ludwig.  See Def. Opp. to Mot. to Compel,

15  docket no. 529, at 2, 6-10; see also Ziontz Decl., docket no. 529, at ¶ 3.  "[The calls and

16  recordings] were effected by [Daria Sanai] calling the detective, then using three-way calling

17  to bring in Sassan."  See Ex. B to Opp. to Summ. J., at ¶ 4 (Daria Sanai Decl.).  During

18  phone calls with Daria Sanai, Sassan Sanai allegedly made statements about wiretapping.

19  Some of these statements were taped, but Plaintiffs do not clearly distinguish between taped

20  statements, and those that were untaped.

21      Daria Sanai claims that Sassan admitted to her that "[he] had initiated wiretapping

22  telephone conversation (sic) approximately 15 years ago," and "that it was 'old news,' that

23  'everyone' knew about it and that he had told Cyrus about it."  See Ex. B to Opp. to Summ.

24  J., docket no. 626, at ¶ 4 (Daria Sanai Decl.).  Daria further claims that Sassan admitted that

25

26      [2] The 2002 in Cyrus Sanai Declaration, Ex. A to Opp. to Summ. J., docket no. 626, is
    apparently a typographical error.  The correct date should be "December 23rd, 2000."

a tape she overheard him listening to in 1987 "was a wiretap tape [of Viveca Sanai] and not

some other tape of Viveca's voice." Id. Daria Sanai states that Sassan Sanai stated that

Mary McCullough was responsible for installing wiretapping equipment in the family home,

and that Mary McCullough organized and kept control of the tapes. Id. Daria Sanai claims

that Sassan Sanai said that Mary had demanded additional money for her assistance with

wiretapping the family home. Id.

Plaintiffs' physical evidence of wiretapping includes pictures of two "phone"

connections, characterized by Plaintiffs as "wiretapping" connections. The first consists of

"dangling wires connecting to a telephone (sic) box." See Ex. C to Opp. to Summ. J., docket

no. 626, at ¶ 3 (Viveca Sanai Decl.). The second is a phone extension in Sassan Sanai's

closet, which was found with a battery pack which Plaintiffs characterize as part of

"wiretapping apparatus." Id. Plaintiff Viveca Sanai found two cassette tapes in the garage

which contained the voices of family members. Id. at ¶ 4. One tape includes a "dubbed"

introduction by Sassan Sanai commenting on the contents of the tape. Id. at ¶ 7. The tapes

contain the voices of Plaintiffs Viveca, Fredric, Daria, and Ingrid, but not the voice of

Plaintiff Cyrus Sanai. Cyrus Sanai claims that he knows his calls were taped only because of

his conversation with Sassan Sanai on December 23, 2000. See Opp. to Summ. J., docket

no. 628, at 2 ("This Court should not[e] (sic) that in the declaration of Cyrus Sanai, he

clearly states that Sassan bragged that Cyrus' calls had been wiretapped.") (citing Ex. 2 to id.

(Cyrus Sanai Decl.)).

**B.    Libel / Slander.**

Plaintiff Fredric Sanai's ninth and tenth causes of action are based on the response by

Sassan Sanai, and his attorney William Sullivan, to an "alleged" extortion letter written by

Fredric Sanai on behalf of his mother, Plaintiff Viveca Sanai. On July 14, 2002, Fredric

Sanai sent a letter to Sassan Sanai's attorney, William Sullivan. The letter stated, in part:

> We have uncovered incontrovertible proof of Sassan Sanai's criminal
> wiretapping. Our overwhelming evidence proves Sassan repeatedly and

1
2
3
4
5
6

> flagrantly violated state and Federal criminal statutes, as well as the canons of medical ethics.  We shall be turning this evidence over to the relevant authorities and the parties who were illegally taped, which includes staff at Stevens Hospital and various physicians, if you do not immediately agree to enter into settlement talks to fairly compensate for the years of unconscionable abuse, humiliation, and severe emotional distress Sassan inflicted on Viveca beyond all standards of human decency.  The recordings are remarkably damning, and their exposure shall cause your client considerable embarrassment as well as serious legal consequences and professional repercussions.  We are not bluffing.  Sample illegal recordings will be provided.

7   See Shultz Decl., docket no. 260, Ex. 3.  Sullivan did not respond to Fredric Sanai's demand

8   for settlement.  See id. at Ex. 4.  Rather, Sullivan forwarded copies of this letter along with

9   his own letter to the Washington State Bar Association ("WSBA"), the Snohomish County

10  Prosecuting Attorney, and the police.  See id. at Ex. 5-6.

11      Fredric Sanai alleges that Sassan Sanai filed a written Complaint with the Washington

12  State Bar Association in King County and the Snohomish County Prosecutor's office.

13  Plaintiffs fail to cite to evidence of a written complaint or statement alleged to be false and

14  written by Sassan Sanai.  Rather, Plaintiffs direct the Court to "the declarations and exhibits

15  filed both in support of and opposed to the motion for summary judgment filed by Sullivan

16  and his law firm for relevant declarations and facts."  See Opp. to Summ. J., docket no. 628,

17  at 6.  With regard to Plaintiff's claims for slander, Fredric Sanai does not point to any

18  evidence of false or defamatory spoken statements by Sassan Sanai.

19      **C.      Invasion of Privacy, Harassment, Stalking.**

20      Plaintiff Viveca Sanai's twelfth cause of action is based on two incidents that

21  occurred during the pendency of the dissolution of Sassan Sanai and Viveca Sanai.[3]  In the

22  first incident, Mary McCullough hired a private investigator, Alexa Osborn, to observe

23  Viveca Sanai, and report on her claims of sickness and limited mobility.  See Ex. 7 to Ek

24  Decl., docket no. 612, at 37-39 (McCullough Dep.).  Viveca Sanai claims that on or around

25

26      [3] Plaintiff references other incidents of alleged harassment and stalking, but Viveca Sanai concedes she has no evidence of involvement by Mary McCullough in those incidents.  See Ex. 5 to Ek Decl., docket no. 612, at 219-222 (Viveca Sanai Dep.).

ORDER - 8

1   August 8, 2001, Ms. Osborn (1) rang the doorbell at her home and asked for the "Anderson's

2   residency;" (2) observed her taking out the garbage from a car parked on the street; and (3)

3   wore a baseball cap and glasses, "hid[] behind a tree," and observed her.  <u>See</u> Ex. 5 to Ek

4   Decl., docket no. 612, at 211-13 (Viveca Sanai Dep.).  Ms. Osborn denies going onto the

5   Sanai property, and states in her declaration that she contacted the police prior to beginning

6   surveillance, to notify them of her activities.  <u>See</u> Ex. E to Gibbs Decl., docket no. 371

7   (Osborn Decl.).

8        In the second incident, Ms. McCullough took a photograph of Viveca Sanai, without

9   her knowledge, at Shorewood High School, on March 14, 2001, during a school play.  <u>See</u>

10  Ex. 5 to Ek Decl., docket no. 612, at 215-16 (Viveca Sanai Dep.).[4]  Plaintiffs provide no

11  further evidence of harassing conduct by Ms. McCullough.  Thus, for purposes of summary

12  judgment, the Court considers only the two incidents.

13        **D.    Plaintiffs' Rule 56(f) Motion for Additional Discovery.**

14        Plaintiffs seek additional discovery of Defendants' financial information, and move

15  pursuant to Fed. R. Civ. P. 56(f) for additional discovery.  Plaintiffs argue that additional

16  discovery will provide facts that demonstrate the full extent of cooperation between IMC and

17  Mary McCullough in the various activities alleged in the Complaint.  However, the Court has

18  previously denied Plaintiffs' requests for discovery of the financial information they seek.

19        Magistrate Judge Theiler entered a Protective Order that included findings that (1)

20  Plaintiffs had no legitimate interest in the discovery of Ms. McCullough's financial records;

21  (2) discovery of financial records did not appear reasonably calculated to lead to discovery

22  of admissible evidence; and (3) Plaintiffs discovery of financial records appeared calculated

23

24        [4] Viveca Sanai also alleges that Ms. McCullough "stated under oath in the divorce
25  litigation that she would [hire a private investigator] again."  <u>See</u> Opp. to Summ. J., docket no.
    626, at 7 (citing Ex. D to Opp. to Summ. J., docket no. 626, at 42:19-51:6; Ex. F to Opp. to
26  Summ. J., docket no. 626, at 5:17-30:23).  However, Plaintiffs misrepresent Ms. McCullough's
    deposition testimony.  Mary McCullough merely responded in the affirmative when asked
    whether she might possibly establish a relationship with a private investigator in the future.

1  to result in annoyance, undue burden and expense, and to invade the privacy of the

2  Defendant McCullough.  See Protective Order, docket no. 305, at ¶ 3.  With regard to

3  Defendants Sassan Sanai and IMC, Judge Theiler found that Plaintiffs' requested financial

4  discovery was overly broad, unduly burdensome, and not reasonably calculated to lead to the

5  discovery of admissible evidence.  Id. at ¶ 4.  Plaintiffs' renewed motions for financial

6  discovery make no showing that the requested financial discovery is relevant or reasonably

7  calculated to lead to the discovery of admissible evidence.  Plaintiffs' motions for additional

8  discovery, docket nos. 626 and 628, are DENIED.

9  ## III.  DISCUSSION

10      Summary judgment is appropriate where there is no genuine issue of material fact and

11  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

12  moving party bears the initial burden of demonstrating the absence of a genuine issue of

13  material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party

14  has met this burden, the opposing party must show that there is a genuine issue of fact for

15  trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The

16  opposing party must present significant and probative evidence to support its claim or

17  defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir.

18  1991).  In order to defeat a motion for summary judgment, the non-moving party must make

19  more than conclusory allegations, speculations, or argumentative assertions that material

20  facts are in dispute.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994).  Moreover,

21  in ruling on a motion for summary judgment, the Court may only consider evidence that

22  would be admissible at trial, and may not consider inadmissible hearsay.  Key Bank of Puget

23  Sound v. Alaskan Harvester, 738 F. Supp. 398, 401 (W.D. Wash. 1989).

24      For purposes of these motions for summary judgment, reasonable doubts as to the

25  existence of material facts are resolved against the moving party and inferences are drawn in

26  the light most favorable to the opposing party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130,

1134 (9th Cir. 2000).  However, if no factual showing is made in opposition to a motion for summary judgment, the District Court is not required to search the record *sua sponte* for some genuine issue of material fact.  See Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) ("The district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record *specifically referenced therein.") (emphasis added).

## 1.    Wiretapping & Invasion of Privacy

### A.    Claims against Sassan Sanai

#### (1)    Wiretapping claims pursuant to 18 U.S.C. § 2511.

##### (a)    *Applicability*

Plaintiff Cyrus Sanai alleges that Defendant Sassan Sanai bragged about his wiretapping of Plaintiff Viveca Sanai and the other Plaintiffs on December 23, 2000.  See Ex. A to Opp. to Summ. J., at ¶ 13 (Cyrus Sanai Decl.).  "[December 23, 2000] was the first time Cyrus learned of any facts regarding Sassan's wiretapping activities."  Id. at ¶ 13. Cyrus Sanai informed the other Plaintiffs about Sassan Sanai's wiretapping activities, and "[t]his was the first time Viveca, Ingrid and Fredric learned of any facts regarding Sassan's illegal wiretapping."  Id. at ¶ 14.

Plaintiffs first cause of action alleges that Sassan Sanai intercepted telephone conversations in violation of 18 U.S.C. § 2511, and invokes this Court's jurisdiction pursuant to 18 U.S.C. § 2520.  See Third Am. Compl., docket no. 145, at ¶¶ 19-29.  Defendants concede that "[f]or the purposes of this motion . . . the Court necessarily should assume that [Sassan Sanai] installed [a wiretap] mechanism in the family home."

Title 18 U.S.C. § 2511(1) provides in part:

> Except as otherwise specifically provided in this chapter any person who --
>
> (a)  intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b)  intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when --

(I)  such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; . . .

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

Recovery of civil damages is authorized in 18 U.S.C. § 2520.  Defendants argue, however, that summary judgment is appropriate because 18 U.S.C. § 2511 does not apply to the wiretapping of communications from a phone extension *within* the family home.  One article summarized the debate as follows:

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 prohibits the intentional interception of any telephone conversation without the consent of one of the parties to the conversation. Although wiretapping evokes images of the Watergate scandal or commercial espionage, approximately 68 percent of all reported wiretapping matters involve one spouse's attempt to obtain evidence for use against the other spouse. Despite the prevalence of interspousal electronic surveillance, Title III fails to directly address the issue of whether such wiretapping activities are legal. The absence of an explicit statutory directive has given rise to the question of whether an implied interspousal immunity exception exists in Title III, thereby rendering the electronic surveillance legal.

Scott J. Glick, Is Your Spouse Taping Your Telephone Calls?: Title III and Interspousal Electronic Surveillance., 41 Cath. U. L. Rev. 845 (1992).  No Ninth Circuit opinion addresses whether 18 U.S.C. § 2511 applies to the wiretapping of spousal communications. Some courts have found that domestic conflict is the domain of the state courts, and Title III is inapplicable.  See, e.g., Simpson v. Simpson, 490 F.2d 803 (5th Cir. 1974).  The Tenth Circuit, however, found that such worries about federal intrusion into the state domain were unfounded.  See Heggy v. Heggy, 944 F.2d 1537 (10th Cir 1991).  Heggy rejected the position that application of Title III to interspousal wiretapping would result in unwarranted federal intrusion:

Title III regulates electronic eavesdropping, not marital relations. It proscribes one method of gathering evidence for use in, inter alia, domestic relations cases, but in no manner deals with the merits of such cases. . . .

ORDER -  12

1
2

> The evils of electronic surveillance are not peculiar to the marital relationship, and there is no more reason to permit husbands and wives to perpetrate these evils upon each other with impunity than there is to permit them legally to commit any other crimes against each other.

3
4

Heggy, 944 F.2d at 1541 (citing Kratz v. Kratz, 477 F. Supp. 463, 476 (E.D. Penn. 1979)).

5
6

Heggy also addressed the issue of congressional intent.  In an instructive discussion of the

background and hearings surrounding Title III, Heggy cited numerous examples which

7

demonstrated that wiretapping in domestic relations, i.e. interspousal wiretapping, was of

8

primary concern to Congress when Title III was enacted.  See Heggy, 944 F.2d at 1540-41.

9

This Court agrees with Heggy.  Title III applies to interspousal wiretapping.  See also

10

Glazner v. Glazner, 347 F.3d 1212 (11th Cir. 2003) (en banc).  Glazner reasoned as follows:

11
12

> The statute expressly gives "**any** person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter" the right to bring a civil action against "the person or entity . . . which engaged in that violation."

13
14
15

> In the present case, [plaintiff wife] is "**any** person" within the meaning of § 2520(a). [Defendant husband] is "**any** person" within the meaning of § 2511(1)(a). Finally, [plaintiff wife's] conversations that [defendant husband]  caused to be intercepted and recorded are **any** "wire, oral, or electronic communication" within the meaning of § 2520(a).

16

Glazner, 347 F.3d at 1215.  The Court found the language in Title III to be broadly inclusive

17

of interspousal wiretapping activities, and found that the plain language of the statute must

18

control.[5]  No Ninth Circuit decision has addressed application of 18 U.S.C. § 2511 to

19

interspousal wiretapping.  In dicta, Judge Stotler in the Central District of California

20

discussed the interspousal wiretapping debate.  See Perfit v. Perfit, 693 F. Supp. 851 (C.D.

21

Cal. 1988).  The facts in Perfit are not unlike the allegations here.  Plaintiff June Perfit

22

discovered a voice-activated tape-recording device on a telephone in an empty bedroom.

23

Perfit removed the device and a cassette on which certain telephone conversations were

24

25
26

[5] The Court stated that it would only look beyond the plain language of a statute where giving effect to the language used by Congress would lead to a truly absurd result. Glazner, 347 F.3d at 1215 (citing United States v. Maung, 267 F.3d 1113, 1121 (11th Cir. 2001)). The Court noted, however, that none of the parties alleged that the "absurdity exception" should apply. Id.

ORDER - 13

recorded.  Perfit preserved both for use as evidence.  Perfit brought suit, alleging that Martin Perfit intercepted oral communications, invaded her privacy, and caused intentional and negligent infliction of emotional distress.  At the conclusion of plaintiff June Perfit's testimony, the Court granted defendant's motion for directed verdict finding that "[a]pplication of federal law to an interspousal domestic conflict would run counter to the tradition of leaving such matters to the realm of state courts."  Perfit, 693 F. Supp. at 855-56. However, Judge Stotler also noted that "even if [Title III] applied, the evidence did not support a reasonable inference that the statute had been violated."  Id. at 853.

Defendants direct the Court to a Second Circuit decision in Anonymous v. Anonymous, 558 F.2d 677 (2d Cir. 1977), where the defendant purchased a "newly popular automatic telephone answering machine[]" at a local retail store.  Calls answered by the machine would be recorded for 45-seconds, and incoming calls could be monitored on a "loudspeaker."  Defendant allegedly instructed his son to turn the knob to "record" when his mother called, "thus surreptitiously taping her conversations beyond the 45 second period." As noted in 18 U.S.C. § 2510, the list of prohibited devices does not include:

> any telephone or telegraph instrument, equipment or facility, or any component thereof, (I) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business;

Anonymous found this statutory exception precluded application of 18 U.S.C. § 2511 to the family home, because "[defendant's] activity would clearly not be prohibited if it consisted merely of listening into his wife's and daughter's telephone conversations from an extension phone in his apartment."  Perfit agreed, finding that

> [w]hat defendant accomplished in this case could have been accomplished just as easily by listening in on one of several extension phones described by plaintiff's evidence to be found in the home.  Furthermore, the Court reads the extension exception as an expression of Congressional intent to exclude from Title III the interception of telephone conversations taking place within the marital home.

ORDER - 14

1    Perfit, 693 F. Supp. at 859.  This Court finds it unlikely, however, that application of Title III

2    to interspousal wiretapping will result in increased federal regulation of domestic relations.

3    Heggy, 944 F.2d at 1541.  Rather, the more likely result is a decrease in interspousal

4    wiretapping.  Id.  Moreover, the Court is persuaded, as Plaintiffs have argued, that the

5    majority of circuits correctly interpret Title III as prohibiting interspousal wiretapping.  See,

6    e.g., United States v. Jones, 542 F.2d 661 (6th Cir. 1976); Pritchard v. Pritchard, 732 F.2d

7    372 (4th Cir. 1984); Bess v. Bess, 929 F.2d 1332 (8th Cir. 1991); Heggy v. Heggy, 944 F.2d

8    1537 (10th Cir. 1991); Glazner v. Glazner, 347 F.3d 1212 (11th Cir. 2003).

9        Title III of the Omnibus Crime Act creates civil liability where one spouse installs a

10   recording device on a telephone in the mutually occupied marital home without the other

11   spouse's knowledge or consent.

12               *(b)    Expectation of privacy*

13       Defendants argue that Title III of the Omnibus Crime Act is inapplicable because 18

14   U.S.C. § 2510(2) requires the oral communication be made with an expectation of privacy,

15   or by a person "exhibiting an expectation that such communication is not subject to

16   interception under circumstances justifying such expectation."  Defendants argue that

17   Plaintiffs' were aware that their father, Sassan Sanai, would frequently monitor telephone

18   conversations from an extension line within the home.  See Ziontz Decl., docket no. 615, at

19   16 (Daria Sanai Dep. Exerpt).[6]  Defendants argue that this awareness of Sassan Sanai's

20   alleged monitoring means that Plaintiffs had no expectation of privacy.  The Court rejects

21   this argument.  Taking every inference in favor of the Plaintiffs, material questions of fact

22   exist with regard to whether Plaintiffs had an expectation that their telephone calls would be

23   intercepted.  As such, summary judgment on this ground must be DENIED.

24   _____

25       [6] The Ziontz Declaration fails to include proper cover sheets and signature pages as
     required by Fed. R. Civ. P. 56(e). The Court directs the parties to include proper authenticating
     materials with declarations, depositions, and other supporting evidence in all future filings with
26   the Court. However, the Court will consider the declaration for purposes of these motions for
     summary judgment.

1          **(2)     Wiretapping claims under Washington law**

2          With regard to Plaintiffs' allegations of violation of the right to privacy, Defendants

3    argue that Plaintiffs cannot have had a reasonable expectation of privacy because they were

4    aware that Sassan Sanai monitored their phone calls.  The Washington Supreme Court

5    opinion in <u>State v. Christenson</u>, 153 Wash.2d 186 (2004), confirms that a lowered

6    expectation of privacy with respect to "extension" monitoring of calls would not apply to

7    recorded conversations when Defendant Sassan Sanai was not in the house.  Summary

8    judgment on Plaintiffs' cause of action for wiretapping under Washington law is therefore

9    DENIED.

10          **(3)     Wiretapping claims under Oregon law**

11          In Defendants' Motion for Summary Judgment, docket no. 615, Defendant Sassan

12   Sanai argues that Plaintiff Fredric Sanai has not presented any evidence to support his claims

13   of wiretapping under Oregon law.  Plaintiff does not respond to Defendants' argument.

14   Once the Defendant points out a lack of evidence, the Plaintiff must put forth significant and

15   probative evidence to support his claim or defense.  <u>See</u> <u>Intel Corp.</u>, 952 F.2d at 1558.

16   Fredric Sanai has presented no evidence to support the Oregon wiretap claims.  Sassan

17   Sanai's Motion for Summary Judgment on Plaintiff Fredric Sanai's Fourth Cause of Action

18   for Wiretapping under Oregon law is therefore GRANTED.

19          **B.     Claims against Mary McCullough**

20          Plaintiffs allege that Mary McCullough assisted their father, Sassan Sanai, in the

21   alleged wiretapping of the family home.  As evidence of this alleged wiretapping assistance,

22   Plaintiffs ask the Court to consider two statements made by Sassan Sanai in support of this

23   allegation.

24          **(1)     Admissibility of the First Statement**

25          The first statement Plaintiffs seek to admit as evidence of Mary McCullough's

26   participation in the wiretapping of the family home is set forth in Daria Sanai's declaration.

> Sassan repeated a demand for additional money by Mary to Sassan in respect of her activities having Viveca followed. Sassan separately also quoted Mary as demanding additional money in respect of her assistance in wiretapping.

See Ex. B to Opp. to Summ. J., docket no. 626, at ¶ 4. Plaintiffs argue that the first statement made by Mary McCullough to Sassan Sanai, allegedly repeated by Sassan Sanai to Daria Sanai, is admissible because it is not hearsay. Plaintiffs argue that first statement is not hearsay because it is offered to prove the conspiracy between Sassan Sanai and Mary McCullough. A statement is not hearsay if the statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). Moreover, hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statement conforms with an exception to the hearsay rule. Fed. R. Evid. 805.

Plaintiffs argue that Mary McCullough and Sassan Sanai engaged in a conspiracy, and ask the Court to find these statements admissible on that basis. Plaintiffs allegations of conspiracy include (1) cooperation between Mary McCullough and Sassan Sanai, (2) Mary's alleged assertion that she would cover his litigation expenses if unpaid, and (3) Mary's alleged payment for private detective services. Before considering a hearsay statement under Fed. R. Evid. 801(d)(2)(E), the Court must determine whether (1) a conspiracy existed involving the declarant; (2) the statement was made in the course of the conspiracy; and (3) the statement was made in furtherance of the conspiracy. See United States v. Peralta, 941 F.2d 1003, 1005 (9th Cir. 1991).

Where there is no independent evidence of the existence of a conspiracy, or the only evidence is "weak" or "equivocal," the Court should decline to find the exception in Fed. R. Evid. 801(d)(2)(E) applicable. See United States v. Castaneda, 16 F.3d 1504, 1509 (9th Cir. 1994). Here, Plaintiffs provide no evidence that the statement was made in the course of a conspiracy, nor can they show that the statement was made in furtherance of a conspiracy. Plaintiffs ask the Court to find that any statement between alleged conspirators is during the

ORDER - 17

course of the conspiracy, and in furtherance of the conspiracy.  However, the Ninth Circuit

has directed otherwise:

> We . . . delineated types of statements that are not in furtherance [of the conspiracy]: Confessions or admissions of a coconspirator, "mere conversations between conspirators" or "merely narrative declarations." Such statements are not admissible since they cannot meet the condition for admissibility which is that the statements "must further the common objectives of the conspiracy."

United States v. Fielding, 645 F.2d 719, 726 (9th Cir. 1981), citing United States v. Eubanks,

591 F.2d 513, 520 (9th Cir 1979).  Plaintiffs do not present evidence that these statements

were in furtherance of a "common objective" of the alleged conspiracy.  Plaintiffs present

only conclusory allegations, unsupported by evidence or facts.  The Court therefore

concludes that the coconspirator hearsay exception found in Fed. R. Evid. 801(d)(2)(E) does

not apply.

Plaintiffs argue that Mary McCullough's "demand" statement is admissible as an

admission of a party-opponent under Fed. R. Evid. 801(d)(2)(A).  Setting aside questions of

hearsay within hearsay under Fed. R. Evid. 805, this argument must also fail.  Plaintiffs fail

to make more than a conclusory assertion that Ms. McCullough's statement is admissible

under Fed. R. Evid. 801(d)(2)(A), as an admission that is "the party's own statement, in

either an individual or a representative capacity."  Plaintiffs do not identify what specific

"party's own statement" is attributable to Ms. McCullough.  Moreover, they fail to identify

whether they are alleging Sassan Sanai was acting in a representative capacity for Ms.

McCullough, or to support that allegation with admissible evidence.  Even if the "demand"

statement were admissible as the admission of a party opponent, Plaintiffs fail to identify

how Sassan Sanai's restatement of Ms. McCullough's alleged admission would constitute

admissible hearsay for the purposes of Fed. R. Evid. 805, without the aid of the

coconspirator exception rejected above.

Plaintiffs argue that Mary McCullough's statement is admissible because it was "a

statement by a person authorized by the party to make a statement concerning the subject."

ORDER -  18

1   See Fed. R. Evid. 801(d)(2)(C).  Plaintiffs argue that "[a]s Mary's employer and principal,

2   Sassan is automatically and implicitly authorized to repeat her statements to him."  See Opp.

3   to Summ. J., docket no. 626, at 5.  Plaintiffs cite no authority for this extraordinary

4   proposition.  Plaintiffs fail to establish, as a foundational matter, the applicability of Fed. R.

5   Evid. 801(d)(2)(c) in the context of alleged illegal activity that is unrelated to the employer's

6   business.  As such, Plaintiffs' argument for application of Fed. R. Evid. 801(d)(2)(c) must

7   fail.

8                    **(2)    Admissibility of the Second Statement**

9            The second statement Plaintiffs seek to admit as evidence of Mary McCullough's

10   participation in the wiretapping of the family home is set forth in Daria Sanai's declaration.

11                   Sassan stated that Mary had been responsible for having the wiretapping
                     equipment installed in the family home, and that she had organized and
12                   kept control of the tapes.

13   Ex. B to Opp. to Summ. J., docket no. 626, at ¶ 4 (Daria Sanai Decl.).  Plaintiffs argue that

14   this statement is not hearsay, and that "even if it were it should be admitted."  Plaintiffs

15   argue that this statement is not hearsay because it "falls under the conspiracy exception."  As

16   noted above, however, before considering a hearsay statement under Fed. R. Evid.

17   801(d)(2)(E), the Court must evaluate whether (1) a conspiracy existed involving the

18   declarant; (2) the statement was made in the course of the conspiracy; and (3) the statement

19   was made in furtherance of the conspiracy.  See Peralta, 941 F.2d at 1005.  Plaintiffs urge

20   the Court to find a conspiracy with a broad purpose – "[to] obtain as much money as possible

21   out of the divorce litigation," and argue that Sassan Sanai's statement here was in furtherance

22   of, and in the course of, the divorce litigation conspiracy.  However, as discussed above, the

23   Court rejects this argument.

24           Alternatively, Plaintiffs urge the Court to accept that "as the statement is coming in

25   anyway, it may be admitted against Mary under Fed. R. Evid. 803(24) and 807."  However,

26   even if Plaintiffs were correct that this evidence is admissible against Sassan Sanai, they

ORDER - 19

1   provide no authority showing that this information would be admissible against Mary

2   McCullough.  Under Fed. R. Evid. 807, Plaintiffs urge the Court to find that "equivalent

3   circumstantial guarantees of trustworthiness" are present.  In order to be admissible pursuant

4   to the "residual exception," the evidence must meet all five requirements: (1)

5   trustworthiness; (2) materiality; (3) probative importance; (4) interests of justice; and (5)

6   notice.  See Parsons v. Honeywell, Inc., 929 F.2d 901, 907-08 (2d Cir. 1991).  The Court

7   finds that the residual exception should not be applied to this statement.  Plaintiffs point the

8   Court to no facts or evidence that would establish that any type of circumstantial guarantee

9   of trustworthiness is present.  The expansive view of Fed. R. Evid. 807 urged by Plaintiffs is

10  at odds with the limited circumstances in which it should be applied, lest it "swallow the

11  entirety of the hearsay rule."  United States v. Tome, 61 F.3d 1446, 1452 (10th Cir. 1995).

12      Plaintiffs argument that the second statement should be admitted must fail. The

13  second statement is inadmissible hearsay, is not subject to any hearsay exception, and is

14  therefore inadmissible against Mary McCullough.

15              **(3)    Conclusion**

16      Plaintiffs have provided this Court with no evidence of Mary McCullough's

17  involvement in the wiretapping of the family home, apart from two inadmissible hearsay

18  statements allegedly made by Sassan Sanai.  The Court GRANTS Mary McCullough's

19  Motion for Summary Judgment on Plaintiffs' Causes of Action for Wiretapping and Invasion

20  of Privacy.

21      **C.    Claims against Internal Medicine & Cardiology.**

22      Internal Medicine & Cardiology ("IMC") is Sassan Sanai's medical practice, and its

23  business relates to the care of Dr. Sanai's patients.  Plaintiffs assert various wiretapping

24  claims against IMC, alleging that Sassan Sanai employed Mary McCullough for bookkeeping

25  services, and personal affairs.  Plaintiffs allege that these personal affairs included assistance

26

1   in wiretapping the family home.  As such, Plaintiffs argue that IMC should be held liable

2   under the doctrine of respondeat superior.

3       Under respondeat superior, an employer is only liable for torts committed by an

4   employee within the scope of the employee's employment.  See Thompson v. Everett Clinic,

5   71 Wash. App. 548 (1993).  In order to hold an employer vicariously liable for the tortious

6   acts of its employees, it must be established that the employee was acting in furtherance of

7   the employer's business and that the employee was acting in the scope and course of

8   employment when the tortious act was committed.  Henderson v. Pennwalt Corp., 41 Wash.

9   App. 547 (1985).  The test for determining whether an employee was within the course of his

10  or her employment at the time of the commission of the wrongful act is whether the

11  employee was, at the time, engaged in the performance of the duties required of him by his

12  contract of employment, or by specific direction of his employer, or whether he was engaged

13  at the time in furtherance of the employer's interests.  Dickinson v. Edwards, 105 Wash.2d

14  457, 467 (1986).

15          **(1)    Employment of Mary McCullough.**

16      Plaintiffs allege that Sassan Sanai utilized Mary McCullough as a bookkeeper and

17  personal assistant.  See Ex. B to Opp. to Summ. J., docket no. 626, at ¶ 16 (Daria Sanai

18  Decl.); Ex. C to Opp. to Summ. J., docket no. 626, at ¶ 9.  However, factual allegations that

19  Mary McCullough ran personal errands or handled Sassan Sanai's personal finances are

20  insufficient to establish that Mary McCullough participated in wiretapping on behalf of IMC,

21  or on behalf of Sassan Sanai.

22      Plaintiffs argue that a trier of fact could conclude that because Mary McCullough

23  performed personal errands for Sassan Sanai, she received compensation for wiretapping

24  activities.  However, Plaintiffs present the Court with no admissible evidence that Mary

25  McCullough engaged in any wiretapping activities.

26  ///

ORDER -  21

///

///

### (2)    Admissibility of the Second Statement

Plaintiffs again seek to admit the second statement referenced above as evidence that Mary McCullough engaged in wiretapping activities on behalf of IMC.  The statement is set forth in Daria Sanai's declaration:

> Sassan stated that Mary had been responsible for having the wiretapping equipment installed in the family home, and that she had organized and kept control of the tapes.

Ex. B to Opp. to Summ. J., docket no. 626, at ¶ 4 (Daria Sanai Decl.).  Plaintiffs argue that Sassan Sanai is the sole shareholder in IMC, and is "authorized in all cases and all situations to speak for the company."  See Opp. to Summ. J., docket no. 626, at 14.  Plaintiffs argue that the above statement is therefore admissible under Fed. R. Evid. 801 as an admission of a party opponent and an authorized admission.  The fallacy of Plaintiffs' argument is that even if Sassan Sanai were "authorized in all cases and all situations to speak for the company," that would not mean that in all cases and situations when Sassan Sanai speaks, that he speaks for the company.  Plaintiffs provide absolutely no evidence that Sassan Sanai's alleged statement to Daria Sanai was on behalf of IMC, or that it was related to IMC, or to Mary McCullough's duties at IMC.  Thus, for the reasons stated, as well as the reasons stated in the previous section, the Court finds that this statement is inadmissible hearsay, is not an admission of a party-opponent, and may not be considered by the Court.

### (3)    Stalking & Invasion of Privacy

Plaintiffs allege that Mary McCullough's surveillance of Viveca Sanai on two different occasions implicates IMC in their causes of action for wiretapping.  On one occasion, Mary McCullough hired a private investigator to observe Viveca Sanai.  See Ex. 7 to Ek Decl., docket no. 612, at 37-39 (McCullough Dep.).  Plaintiffs allege that Mary McCullough was reimbursed by IMC for this surveillance of Viveca, and have provided the

1  Court with evidence showing that Ms. McCullough was reimbursed by IMC in the amount of

2  $737.35.  See Exs. G, H to Opp. to Summ. J., docket no 626.  Plaintiffs argue that a triable

3  issue of fact exists as to whether IMC reimbursed Mary McCullough for her surveillance of

4  Viveca Sanai.

5        However, the question of whether Sassan Sanai, or IMC, reimbursed Mary

6  McCullough for her surveillance of Viveca Sanai is irrelevant and completely separate from

7  the question of whether IMC is responsible or liable for wiretapping of the Sanai family

8  home.  Plaintiffs' Complaint does not allege conduct by IMC related to stalking, harassment,

9  or surveillance.  See Third. Am. Compl., docket no. 145, ¶¶ 30-37.  Rather, Plaintiffs'

10  Second Cause of Action for invasion of privacy under Washington law relates only to claims

11  of illegal wiretapping by IMC.  Id. at ¶ 31 (Defendants conspired to violate Plaintiffs' right

12  to privacy by wiretapping Plaintiffs' telephone conversations).

13        While the parties dispute whether IMC reimbursed Mary McCullough for the

14  investigative activities regarding Viveca Sanai, there is no issue of fact as to Plaintiffs'

15  claims that IMC funded, participated in, or otherwise sanctioned any wiretapping of the

16  Sanai family home.  Plaintiffs fail to provide any evidence of IMC's involvement in any

17  alleged wiretapping.  Summary judgment is therefore appropriate on claims against IMC.

18              **(4)**     **Conclusion**

19        Plaintiffs have presented the Court with no admissible evidence of wrongdoing by

20  Defendant IMC.  The Court GRANTS Defendant IMC's Motion for Summary Judgment on

21  Plaintiffs' Causes of Action for Wiretapping and Invasion of Privacy.

22  **2.    Libel & Slander**

23        **A.    Claims against Sassan Sanai**

24        Plaintiff Fredric Sanai's Ninth and Tenth causes of action for libel and slander remain

25  only against Sassan Sanai.  See Order, docket no. 333.  Fredric Sanai bases his claim for libel

26  on the exception set out in Wash. Rev. Code 9A.56.130(2), which provides:

> In any prosecution under this section based on a threat to accuse any person of a crime or cause criminal charges to be instituted against any person, it is a defense that the actor reasonably believed the threatened criminal charge to be true and that his or her sole purpose was to compel or induce the person threatened to take reasonable action to make good the wrong which was the subject of such threatened criminal charge.

Plaintiff argues that the Court of Appeals has explicitly found that a threat to report criminal activity, unless compensation is paid to the party injured by the wrongdoer's conduct, is not extortion under Washington law. See State v. Pauling, 108 Wash. App. 445 (2001), rev'd, State v. Pauling, 149 Wash.2d 381 (2003). As such, Plaintiff argues that Defendant's accusations of extortion are libel and slander.

### (1)   Libel & Slander

To prevail on his libel and slander claims at trial, Fredric Sanai must prove that (1) Sassan's letters and/or statements to third parties were demonstrably false; (2) Sassan was not privileged to make those statements; (3) Sassan was at fault because he knew, or should have known, that his statements were false or would create a false impression; and (4) that the false statements caused Fredric Sanai damages. See Caruso v. Local Union No. 690, 107 Wash.2d 524, 529 (1987).

#### (a)   Demonstrably false statements.

Defendant Sassan Sanai argues that there is no evidence in the record regarding false statements, and alleges there is no question of fact for trial. Plaintiff Fredric Sanai has the burden of making a factual showing in opposition to the motion for summary judgment. Fredric Sanai's reference to "specific" facts is inadequate and inconsistent with the duty on the non-moving party:

> The Court is referred to the declarations and exhibits filed both in support of and opposed to the motion for summary judgment filed by Sullivan and his law firm for relevant declarations and facts.

Opp. to Summ. J., docket no. 628, at 6. The Court is not required to *sua sponte* review the record to find factual issues for trial. See Carmen, 237 F.3d at 1029. Plaintiff does not identify any statements to police regarding Fredric Sanai's theft of the family car, and

ORDER - 24

1    Plaintiff now disclaims those allegations as a basis for this lawsuit.  The remaining claims for

2    libel and slander relate to Sassan Sanai's alleged statements regarding Fredric Sanai's

3    attempted extortion.  However, the only statements referenced by Plaintiff are those of

4    Sassan Sanai's attorney, William Sullivan.  This Court has already ruled that those

5    statements were not "provably false."  Plaintiff's motion for summary judgment on the

6    claims for libel and slander must fail.  Plaintiff references "Sassan's provably false

7    statements to the Washington State Bar Association and the police . . ." but fails to identify

8    or provide any factual basis for the assertion that these statements were ever made.

9          In addition, the Court is not convinced that a statement that "Fredric Sanai committed

10   extortion" would be provably false under any circumstances—even if Sassan Sanai

11   wiretapped the family as charged, and the tapes in Plaintiffs' possession contain evidence of

12   wiretapping.  Washington law defines second degree extortion as follows:

13          (1) A person is guilty of extortion in the second degree if he or she
            commits extortion by means of a wrongful threat as defined in RCW
14          9A.04.110(25) (d) through (j).

15          (2) In any prosecution under this section based on a threat to accuse any
            person of a crime or cause criminal charges to be instituted against any
16          person, it is a defense that the actor reasonably believed the threatened
            criminal charge to be true and that his or her sole purpose was to compel
17          or induce the person threatened to take reasonable action to make good the
            wrong which was the subject of such threatened criminal charge.
18
Wash. Rev. Code § 9A.56.130 (Extortion in the second degree).  Plaintiff relies on
19
9A.56.130(2) as the basis for his claim that he did not commit second degree extortion.
20
However, part 9A.56.130(2) merely provides a defense to the allegation of second degree
21
extortion.  Threatening prosecution unless restitution is made for some damage to property is
22
listed as a threat under Wash. Rev. Code 9A.04.110(25)(d), although the Supreme Court has
23
affirmed 9A.56.130(2) may provide a defense to such a charge.
24
           However, Plaintiff Fredric Sanai did not merely threaten to turn over the alleged
25
wiretap tapes.  Fredric Sanai threatened to
26

1
2
3

> turn[] this evidence over to . . . *the parties who were illegally taped*, which includes staff at Stevens Hospital and various physicians, if you do not immediately agree to enter into settlement talks to fairly compensate for the years of unconscionable abuse, humiliation, and severe emotional distress Sassan inflicted on Viveca

4
5

See Shultz Decl., docket no. 260, Ex. 3.  Plaintiff stated that by turning over the recordings, he would

6
7

> cause [Sassan Sanai] considerable embarrassment as well as serious legal consequences and professional repercussions.

8
9
10
11
12
13
14
15

See id. at 1.  Setting aside threats of criminal prosecution, the question of whether such threats to cause "considerable embarrassment . . . and professional repercussions" were wrongful and constituted extortion in the second degree can only be determined in the context of a criminal prosecution of Fredric Sanai for extortion in the second degree.  The threats were wrongful under Wash. Rev. Code 9A.04.110(25)(d), but Wash. Rev. Code § 9A.56.130(2) could have provided a defense to at least some allegations of extortion.  However, the suggestion that any characterization of Fredric Sanai's letter as extortion is "provably false" is without merit.

16
17
18
19
20

Fredric Sanai's argument that this letter was privileged is not relevant to these claims.  Where a lawyer's actions on behalf of a client constitute criminal extortion, no privilege protects the attorney and thereby renders the action legal.  Plaintiff's cause of action for libel must fail because Plaintiff has failed to show any statement that is alleged to be false, or that such a statement, if presented, would be provably false.

*(2)    Privilege*

21
22
23
24
25
26

Even assuming that Sassan Sanai made a statement that was provably false, Plaintiff's claim for slander or libel would still fail if the statements in question were absolutely or conditionally privileged.  Jolly v. Fossom, 63 Wash.2d 537, 541 (1964).  Whether a privilege exists is a question of law for the court to decide.  Liberty Bank of Seattle, Inc. v. Henderson, 75 Wash. App. 546, 563 (1994).  Sassan contends that any statements are subject

to absolute privilege under Wash. Rev. Code 4.24.510, with respect to communications to

government agencies.  In addition, communications with the WSBA are also at issue.

Sassan Sanai argues that he is entitled to absolute immunity under Wash. Rev. Code

4.24.510, which states in relevant part as follows:

> A person who communicates a complaint or information to any branch or
> agency of federal, state, or local government . . . is immune from civil
> liability for claims based upon the communication to the agency or
> organization regarding any matter reasonably of concern to that agency or
> organization.  A person prevailing upon the defense provided for in this
> section is entitled to recover expenses and reasonable attorneys' fees
> incurred in establishing the defense and in addition shall receive statutory
> damages of ten thousand dollars.  Statutory damages may be denied if the
> court finds the complaint or information was communicated in bad faith.

Wash. Rev. Code 4.24.510.  Plaintiff alleges that Sassan Sanai falsely reported Fredric Sanai

to the police and Washington State Bar Association for extortion; however, Plaintiff cannot

refute the absolute privilege set forth in Wash. Rev. Code 4.24.510.  As the Court has

previously determined with regard to William Sullivan, any statements by Sassan Sanai to

the WSBA, the prosecuting attorney, or the police, are entitled to absolute immunity under

Wash. Rev. Code 4.24.510.  The matters communicated – alleged criminal extortion by an

attorney – were reasonably the concern of those respective agencies.

In addition, any communications by Sassan to the WSBA were privileged.  Prior to

October 1, 2002, the Rules of Lawyer Discipline ("RLD") were applicable to actions by

attorneys in Washington State.  RLD 12.11(b) (emphasis added) states as follows:

> <u>Communications to the Association, Board of Governors, Disciplinary
> Board</u>, review committee, hearing officer or panel, disciplinary counsel,
> special district counsel, Association staff, staff and peer counselors of the
> Lawyers' Assistance Program, or any other individual acting under
> authority of these rules, <u>are absolutely privileged, and no lawsuit
> predicated thereon may be instituted against any grievant, witness or other
> person providing information.</u>

RLD 12.11(b) expressly precludes a lawsuit based on the sort of communications Sullivan,

and allegedly Sassan, made to the WSBA.  Accordingly, the libel claim based on the WSBA

letter(s) fails as a matter of law and summary judgment is appropriate.

ORDER - 27

1      The Court does not address the issues of fault, or damages, because Plaintiff fails to

2  allege what statements were made.  Similarly, the Court cannot address Plaintiff's allegations

3  of slander because Plaintiff has failed to proffer any evidence that a false statement was

4  made, or that any person ever heard a false statement.

5                    **(2)    Conclusion**

6      Defendant Sassan Sanai's Motion for Summary Judgment, docket no. 615, is

7  GRANTED as to Plaintiff Fredric Sanai's Ninth and Tenth causes of action for libel and

8  slander.

9  ## 3.    Invasion of Privacy, Harassment, Stalking.

10     **A.    Claims against Mary McCullough**

11     Plaintiff Viveca Sanai's twelfth cause of action for invasion of privacy, harassment,

12  and stalking is asserted only against Mary McCullough.  With regard to this cause of action,

13  Viveca Sanai has provided the Court with facts surrounding two incidents: (1) observation of

14  Viveca Sanai by private investigator Alexa Osborn on August 8, 2001; and (2) taking a

15  photograph of Viveca Sanai by Mary McCullough at Shorewood High School during a

16  school play.[7]  Plaintiff Viveca Sanai presents three substantive reasons that summary

17  judgment should not be granted.  First, Viveca Sanai requests relief under Wash. Rev. Code

18  § 10.14 in the form of an anti-harassment protection order.  Second, Viveca Sanai requests

19  relief for violation of Wash. Rev. Code § 9A.46, Washington's criminal anti-stalking statute,

20  which Plaintiff contends is actionable under the common law for invasion of privacy.  Third,

21  Viveca Sanai seeks relief for invasion of privacy under Washington's common law.

22                    **(1)    Wash. Rev. Code § 10.14**

23

24  _____

25     [7] Although Plaintiffs reference "multiple" incidents of alleged harassment and stalking, they have provided no evidence that supports or documents that alleged activity, or Mary McCullough's involvement.  Viveca Sanai conceded in her deposition that she has no evidence

26  of involvement by Mary McCullough.  See Ex. 5 to Ek Decl., docket no. 612, at 219-222 (Viveca Sanai Dep.).

1  The intent of Wash. Rev. Code § 10.14 is "to provide victims with a speedy and

2  inexpensive method of obtaining civil anti-harassment protection orders preventing all

3  further unwanted contact between the victim and the perpetrator." <u>See</u> Wash. Rev. Code §

4  10.14.010.  Judge Michael Fox of the King County Superior Court denied Plaintiff Viveca

5  Sanai's request for a protective order against Mary McCullough.  <u>See</u> Ex. 2 to Ek Decl.,

6  docket no. 636, at 1 (Order on Motion for a Protective Order under RCW 10.14, et seq).

7  Plaintiff urges the Court to conflate the Wash. Rev. Code § 10.14, which allows for a

8  speedy protective order, with a private civil cause of action for harassment.  Plaintiff cites no

9  case law in support of her position.  The Court cannot create a private cause of action where

10  it does not exist in the statute.  Plaintiff's claims for civil damages under Wash. Rev. Code §

11  10.14 must fail.

12  **(2)    Wash. Rev. Code § 9A.46**

13  As with Wash. Rev. Code § 10.14, Plaintiff urges the Court to create a new private

14  cause of action.  Plaintiff Viveca Sanai asks the Court to find that Mary McCullough violated

15  Wash. Rev. Code § 9A.46, a criminal statute for stalking, and find as a matter of law such

16  violation is a violation of Washington's common law right to privacy.  Plaintiff's request

17  might be less extraordinary if Ms. McCullough had been convicted of the crime of stalking.

18  However, Ms. McCullough has not been convicted of stalking.

19  The Court does not dispute that the legislature intended to make stalking a crime.

20  However, that proposition is irrelevant in this context.  Plaintiff's suggestion that this Court

21  should evaluate a criminal statute for the purposes of determining whether Viveca Sanai has

22  a private civil cause of action against Mary McCullough is frivolous and without merit.  <u>See</u>

23  <u>Central Bank of Denver v. First Interstate Bank of Denver</u>, 511 U.S. 164, 190-91 (1994)

24  (civil cause of action does not follow criminal violation); <u>see also</u> <u>Aldabe v. Aldabe</u>, 616

25  F.2d 1089, 1092 (9th Cir. 1980) (criminal provision does not provide basis for civil liability).

26

1   This Court will not conflate Washington's invasion of privacy tort with Washington's

2   criminal anti-stalking statute for the purpose of creating a new civil cause of action.

3                  **(3)     Tortious Invasion of Privacy**

4          In Washington, the common law right of privacy exists and individuals may bring a

5   cause of action for the violation of that right.  Reid v. Pierce County, 136 Wash.2d 195, 206

6   (1998).  Courts look to the Restatement (Second) of Torts for the "guiding principles" of this

7   cause of action.  Reid, 136 Wash.2d at 206.  The Restatement (Second) of Torts § 652B

8   (1977) provides that "[o]ne who intentionally intrudes, physically or otherwise, upon the

9   solitude or seclusion of another or his private affairs or concerns, is subject to liability to the

10  other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable

11  person."  Peters v. Vinatieri, 102 Wash. App. 641, 657 (2000).

12         In Mark v. KING Broadcasting Co., 27 Wash. App. 344, 356 (1980), the Court of

13  Appeals stated that "[t]he invasion or intrusion must be of something which the general

14  public would not be free to view."  In Mark, the Court held that a news crew filming people

15  inside a closed and locked pharmacy from outside the building did not invade the occupants'

16  privacy.  Id. at 354-57.  Although the parties disputed whether the filming was conducted

17  from a public sidewalk or on private property, the court found this to be of no consequence.

18  Id. at 355; see also Jeffers v. City of Seattle, 23 Wash. App. 301, 316, 597 P.2d 899 (1979).

19  The filming took place in an area open to the public and without subterfuge.  Mark, 27

20  Wash. App. at 355-56.  Thus, "[t]here [was] no reason to believe that a person of ordinary

21  sensibilities would be offended."  Id. at 356 (citing Dietemann v. Time, Inc., 449 F.2d 245

22  (9th Cir. 1971)).

23         Similarly, in Peters, two Lewis County Health Department agents went onto an access

24  road on plaintiff's property and videotaped two illegal RV hookups on the property.  Peters,

25  102 Wash. App. at 644.  Plaintiff sued the Department and its director alleging, *inter alia*,

26  invasion of privacy.  Id.  Relying on Mark, the Court noted that the alleged filming took

1   place in an area that was open to the public – even though on a private access road – and

2   found that it would not have been highly offensive to a person of normal sensibilities.  Here,

3   the surveillance by Alexa Osborn and the photograph taken by Mary McCullough took place

4   in areas open to the public, and Plaintiffs have not alleged any "subterfuge."  The two

5   incidents that are before the Court do not support any allegation that the intrusion was

6   "highly offensive."[8]

7       The Court rejects Plaintiff's argument that Peters and Mark are inapplicable here

8   because each involved only a single incident of filming.  To the contrary, the Court's focus is

9   on whether "[t]he invasion or intrusion must be of something which the general public would

10  not be free to view," in addition to whether the intrusion was "highly offensive."  Mark, 27

11  Wash. App. at 356.

12              It is clear that the thing into which there is intrusion or prying must be, and
            be entitled to be, private. . . .  On the public street, or in any other public
13          place, the plaintiff has no legal right to be alone; and it is no invasion of
            his privacy to do no more than follow him about and watch him there.
14          Neither is it such an invasion to take his photograph in such a place, since
            this amounts to nothing more than making a public record, not differing
15          essentially from a full written description, of a public sight which anyone
            would be free to see.

16  Mark v. Seattle Times, 96 Wash.2d 473, 497 (1981).  As a matter of law the two incidents

17  before this Court do not constitute tortious invasion of privacy under Washington law

18  because they did not intrude on the privacy of Viveca Sanai.  Plaintiff does not dispute that

19  the public would have been free to observe the activities that private investigator Alexa

20  Osborn reportedly observed, and does not allege that private investigator Alexa Osborn

21  intruded on any "private" event or occurrence.  Plaintiff Viveca Sanai's allegations of

22  stalking and harassment are based largely on incidents in which Plaintiff concedes she has no

23  evidence of Mary McCullough's involvement.  See Ex. 5 to Ek Decl., docket no. 612, at 219-

24

25          [8] Viveca Sanai alleges many other incidents that may have been an invasion of privacy
        under Washington law.  However, when faced with Plaintiff's concession that she has no
26      evidence of involvement by Mary McCullough, those incidents may not be considered by the
        Court.  See Ex. 5 to Ek Decl., docket no. 612, at 219-222 (Viveca Sanai Dep.).

222 (Viveca Sanai Dep.).  As such, those incidents cannot form the basis for her invasion of privacy claims.

//

//

### (4)    Conclusion

Mary McCullough's Motion for Summary Judgment on Plaintiffs' Causes of Action for Invasion of Privacy, Harassment, and Stalking, is GRANTED.

## CONCLUSION

The Court GRANTS the Motion for Summary Judgment, docket no. 605, by Defendant Internal Medicine and Cardiology.  The Court GRANTS the Motion for Summary Judgment, docket no. 610, by Defendant Mary McCullough.  The Court GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment, docket no. 615, by Defendant Sassan Sanai.  The Court DENIES the Motion for Additional Discovery, docket no. 626, by Plaintiffs Sanai.  The Court DENIES the Motion for Additional Discovery, docket no. 628, by Plaintiffs Sanai.

IT IS SO ORDERED.

DATED this 18th of May, 2005.

_____
Thomas S. Zilly
United States District Judge

ORDER - 32