1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIVECA SANAI, an individual, CYRUS SANAI, an individual, FREDRIC SANAI, an individual, INGRID SANAI BURON, an individual, and DARIA SANAI, an individual,<br><br>                Plaintiffs,<br><br>v.<br><br>SASSAN SANAI, an individual, MARY LYNN McCULLOUGH, an individual, INTERNAL MEDICINE & CARDIOLOGY, INC., a Washington corporation, and DOES 1 through 10,<br><br>                Defendants.<br>_____<br>CYRUS SANAI, an individual, and FREDRIC SANAI, an individual,<br><br>                Plaintiffs,<br><br>v.<br><br>SASSAN SANAI, an individual, MARY LYNN McCULLOUGH, an individual, INTERNAL MEDICINE & CARDIOLOGY, INC., a Washington corporation, WILLIAM SULLIVAN, an individual, and MARSH MUNDORF PRATT SULLIVAN AND MCKENZIE, a partnership,<br><br>                Defendants. | No. C02-2165Z<br><br>AMENDED ORDER |

ORDER - 1

On July 1, 2005, the Court entered an Order dismissing Plaintiffs' Third Amended Complaint. Docket no. 695. In the Order, the Court found Cyrus Sanai, Fredric Sanai, and Viveca Sanai ("Plaintiffs") liable for excessive costs pursuant to 28 U.S.C. § 1927. Id. at 17. The Court deemed Plaintiffs personally liable for the excessive costs, expenses, and attorneys' fees reasonably incurred as the result of their unreasonable and vexatious multiplication of the proceedings and instructed Defendants to submit declarations quantifying such costs, expenses and fees within 20 days. Id. Having reviewed Defendants' declarations, docket nos. 703-710, Plaintiffs' brief in opposition, docket no. 720, and Defendants' briefs in reply, docket nos. 721, 722, 724, 728, and 729, the Court enters the following Order.

## BACKGROUND

The Court imposed § 1927 sanctions based on numerous findings in the Order of July 1, 2005, including but not limited to bad faith, abusive and obstructive litigation tactics, filing scores of frivolous pleadings, failure to comply with discovery as specified in the Federal Rules of Civil Procedure, and refusing to obey this Court's Orders. See docket no. 695 at 2-3. The Court cited a non-exhaustive list of examples, including Plaintiffs' refusal to attend depositions, failure to serve subpoenas, interference with discovery, failure to answer interrogatories, failure to respond to requests for production, failure to produce documents, as well as Plaintiffs' direct disobedience of this Court's orders regarding lis pendens filings, service of process, address changes, and responses to motions. Id. at 3-9. The Court also found that Plaintiffs had engaged in forum shopping and other misconduct, such as illegal wiretapping. Id. at 9-12. Based on the motions and supporting declarations, the individual Defendants quantify their costs and attorneys' fees as follows.

1. <u>Sassan Sanai</u>

Sassan Sanai was represented by William Sullivan of Marsh Mundorf Pratt Sullivan & McKenzie, P.S.C., ("MMPSM") and William Gibbs of Bergman & Gibbs from December

ORDER - 2

2002 until May 2004, and has been represented by Martin Ziontz of Peizer Richards & Ziontz since May 2004. Docket nos. 15, 16, 466, and 471. Mr. Sullivan, Mr. Gibbs, and Mr. Ziontz each submit declarations in support of attorneys' fees under 28 U.S.C. § 1927. Docket nos. 705, 709, 710.

From the filing of this action until May 2004, Mr. Sullivan represented Sassan Sanai and Internal Medicine & Cardiology, Inc. ("IMC"). Sullivan Decl., docket no. 705, at 1. Mr. Sullivan has been an attorney in Washington State since 1978. Id. During the course of representing Sassan Sanai and IMC, Mr. Sullivan's billing rate was $190.00 per hour in 2002, $200 per hour in 2003 and 2004, and is currently $230.00 per hour. Id. at 2-3. Having reviewed his billing records, Mr. Sullivan calculates that he spent 592.8 hours on this matter, excluding time spent addressing the most recent lis pendens filed by plaintiff Cyrus Sanai, which has been disposed of in a separate Order. Id. at 4-5. Mr. Sullivan also calculates that he spent 43.8 hours addressing Plaintiffs' wire tapping and ERISA claims, for which Mr. Sullivan acknowledges there was limited merit. Id. at 5-6. Thus, Mr. Sullivan estimates spending 549 hours on potentially meritless issues. Id. More precisely, Mr. Sullivan estimates that he spent approximately 191 hours addressing those issues specifically identified as bad faith conduct in this Court's previous Order dismissing Plaintiffs' claims. Id. at 8.

From the filing of this action until May 2004, Mr. Gibbs represented defendants Sassan Sanai and Mary McCullough. Gibbs Decl., docket no. 710, at 2. Mr. Gibbs has been an attorney in Washington State since 1979, and his billing rate was an average of $127.50 per hour for Sassan Sanai under his agreement with State Farm Insurance. Id. at 8. Mr. Gibbs billed Mary McCullough $185.00 per hour as a private client. Id. Mr. Gibbs states that he has been paid $108,734.41 by State Farm and Safeco Insurance relating to his work on behalf of Sassan Sanai and Mary McCullough since this matter was filed. Id. at 3. Of the

ORDER - 3

$108,734.41, Mr. Gibbs estimates that 80% represents work in this matter and 20% represents work in state court and in appellate matters. Id.

From May 2004 through the present, Mr. Ziontz has represented Sassan Sanai in this matter. Mr. Ziontz has been an attorney in Washington State since 1980 and his average hourly rate is approximately $137.50 per hour. Ziontz Decl., docket no. 709, at 6. Mr. Ziontz's paralegal bills at a rate of approximately $67.50 per hour. Id. At these rates, Mr. Ziontz and his paralegal have billed Sassan Sanai a total of $104,536.50. Id. In support of the motion to quantify costs, Mr. Ziontz submits a copy of his billing records in this matter. Docket no. 709, Ex. 1, 2. Based on these records, Mr. Ziontz estimates that he and his paralegal have billed $21,757.00 as the result of Plaintiffs' "excessive litigation tactics." Ziontz Decl. at ¶ 3.

2. Mary McCullough

Mary McCullough was first represented by Mr. Gibbs from the filing of the case until April 2004, when various attorneys at the firm of Merrick Hofstedt & Lindsey became her attorneys of record. Ms. McCullough requests a proportionate share of fees charged by Mr. Gibbs as a result of his joint representation of her and Sassan Sanai. McCullough's Mot. to Quantify Costs, docket no. 704, at 4-5. Ms. McCullough also requests all attorneys' fees and costs billed by Tyna Ek, Nancy McCoid, and Nathaniel Smith of Merrick, Hofstedt & Lindsey, totaling $60,300.89. This entire amount, Ms. McCullough argues, was incurred after it became apparent to Plaintiffs that their claims against her were completely without merit. Smith Decl., docket no. 704, Ex. 1 at pp. 2-3. In the alternative, McCullough requests $31,408.78 reflecting the fees and costs directly related to identifiable vexatious and multiplicative conduct by Plaintiffs. Id. at 3-11. Ms. Ek has been an attorney in Washington State since 1984 and billed at a rate of $180.00 per hour. Id. at 4. Ms. McCoid has been an attorney in Washington State since 1983 and billed at a rate of $180.00 per hour. Id. Mr.

ORDER - 4

Smith has been an attorney in Washington State since 1998 and billed at a rate of $150.00 per hour. Id.

### 3. Internal Medicine & Cardiology, Inc.

IMC was originally represented by William Sullivan, who also represented Sassan Sanai as described above. IMC suggests that it is entitled to a portion of the attorneys' fees and costs associated with Mr. Sullivan's earlier representation. More directly, IMC requests all attorneys' fees and costs billed by the law firm of Todd & Wakefield. IMC argues that those fees and costs, totaling $70,188.72, are recoverable because Plaintiffs were aware that their claims against IMC had no basis before March 2004, when Todd & Wakefield undertook its representation of IMC. IMC's Mot. to Quantify, docket no. 706, at 2. Scott Wakefield, the primary attorney for IMC, has been an attorney in Washington State since 1980 and billed IMC at a rate of $150.00 per hour. Wakefield Decl., docket no. 708, at 2. Todd & Wakefield billed IMC for work done by associate attorneys at $125.00 per hour and paralegals at $65.00 per hour. Id. In a supplemental declaration, Todd & Wakefield also states that it billed IMC $13,675.90 between July 21, 2005, and October 6, 2005; IMC requests these fees as well. Supp. Wakefield Decl., docket no. 722, at 2.

### 4. William Sullivan and MMPSM

Mr. Sullivan and MMPSM (collectively "MMPSM") became defendants in this case when Plaintiffs filed a Second Amended Complaint alleging several claims against them, including libel, slander, tortious interference with contract, Privacy Act violations, and an ERISA claim. See Second Am. Compl., docket no. 110; Third Am. Compl., docket no. 145. On behalf of MMPSM, Mr. Sullivan requests fees for 94.8 hours spent defending himself and his firm. Sullivan Decl., docket no. 707, at 1. Mr. Sullivan's average billing rate during this period was approximately $215.00 per hour. Id. at 2-3. MMPSM requests approximately $20,382.00 in fees for this work. MMPSM also requests the attorneys' fees

ORDER - 5

and costs billed by the law firm of Lee Smart Cook Martin & Patterson ("Lee Smart") for defending them in this matter. Schultz Decl., docket no. 703, at 2-3. Lee Smart billed MMPSM $108,398.00 in fees and $8,851.43 in costs, for a total of $117,249.43. Id. at 2. Lee Smart billed MMPSM $150.00 per hour for senior attorneys, $130.00 per hour for associates, and $65.00 per hour for paralegals. Id.

## DISCUSSION

Courts have been given the authority to award attorneys' fees and costs under 28 U.S.C. § 1927, which states as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 applies to any unnecessary filing or tactic that occurs after the complaint is filed but does not include the initial pleading. See Yagman v. Baden, 796 F.2d 1165, 1187 (9th Cir. 1986). An award of fees and costs under § 1927 requires a finding of subjective bad faith, which is present "when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989); Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986). Thus, for § 1927 sanctions to apply, a filing must be either (1) reckless and frivolous or (2) intended to harass. Moore v. Keegan Mgmt. Co., 78 F.3d 431, 436 (9th Cir. 1995). Courts are also directed to consider a number of factors in imposing sanctions, including the ability to deter, whether fees could have been mitigated, and the ability to pay the fee. Yagman, 796 F.2d at 1184-85.

Although § 1927 refers to an "attorney or other person admitted to conduct cases in the United States or any Territory thereof," the Ninth Circuit has explicitly held that the statute extends to non-lawyer *pro se* parties. See Wages v. Internal Revenue Serv., 915 F.2d

ORDER - 6

1230, 1235-36 (9th Cir. 1990) ("Section 1927 sanctions may be imposed upon a pro se plaintiff"). Here, plaintiffs contend that Wages is "not good law" because the Wages court incorrectly cited a prior Ninth Circuit opinion and because a subsequent case by the Supreme Court, Chambers v. NASCO, Inc., 501 U.S. 32, 41 (1991), implicitly overruled Wages. Plaintiffs' arguments are wholly unpersuasive and illustrative of the frivolous arguments they have continually made throughout this litigation. First, the citation in Wages to Wood v. Santa Barbara Chamber of Commerce, Inc., 699 F.2d 484, 485-86 (9th Cir. 1983), was not incorrect. The Wood court held that § 1927 sanctions applied jointly and severally to a party and his counsel where the party was originally *pro se* but later employed counsel on appeal. Id. The sanctions were awarded because "*Wood and his counsel*...caused unnecessary expenditure of judicial time as well as harassment of the numerous parties involved." Id. at 485 (emphasis added). In holding that § 1927 applies to *pro se* litigants, the Wages court merely cited Wood as an example, as was appropriate given that the sanctions in Wood extend to a party. The holding in Wages concerning *pro se* litigants stands on its own as the law in the Ninth Circuit. Second, the Supreme Court's opinion in Chambers did not hold that § 1927 is inapplicable to *pro se* litigants who may or may not be attorneys. In Chambers, the Supreme Court reviewed a case in which the District Court did not impose § 1927 sanctions. 501 U.S. at 41. Without discussion or conclusion, the Court simply described the District Court's reasons for declining to impose § 1927 sanctions, one of which was that Chambers, who was represented by counsel, was not an attorney in the case. Id. at 41-42. In no way did Chambers overrule Wages. Because § 1927 unquestionably applies to *pro se* litigants, Cyrus Sanai, Fredric Sanai, and Viveca Sanai are subject to its sanctions provisions.[1]

---

[1] Additionally, both Cyrus Sanai and Fredric Sanai are "attorney[s]" and "persons admitted to conduct cases in [a] court of the United States or Territory thereof." See 28 U.S.C. § 1927. Thus, under the plain language of the statute, § 1927 is applicable to these plaintiffs.

ORDER - 7

Plaintiffs also object to the lack of specificity in Defendants' request for fees and costs under § 1927. Plaintiffs contend that attorneys' fees indirectly related to the misconduct identified in the Court's Order of July 1 are unavailable and, further, that the Defendants' have not filed sufficient documentation of the fees and costs specifically related to the misconduct. These arguments are not well taken. First, the Court's description of the misconduct in the Order was non-exhaustive. The Order described Plaintiffs' bad faith as being "illustrated by the following *examples* of misconduct, which *represent a small part of the improper and outrageous activities that have taken place*." Docket no. 695 at 4 (emphasis added). Second, courts have not required the specificity or mathematical precision Plaintiffs demand. In Salstrom v. Citicorp Credit Services, Inc., the Ninth Circuit accepted the District Court's estimate that 30% of the total defense costs were the result of sanctionable conduct under § 1927. 74 F.3d 183, 185 (9th Cir. 1996).

The Court is now tasked with quantifying the extent to which Plaintiffs' bad faith conduct has caused "excessive" costs, expenses, and fees in this litigation. In settling on a reasonable award, the Court considers the need to deter Plaintiffs from future bad faith tactics, the degree to which Defendants could have and did mitigate excessive costs and fees caused by Plaintiffs' bad faith conduct, and Plaintiffs' ability to pay the § 1927 sanctions. See Yagman, 796 F.2d at 1184-85. Based on these principles, a substantial award of sanctions is appropriate. First, there is a strong need for deterrence in this case. While Plaintiffs' claims have been dismissed, the Defendants maintain several counterclaims requiring an orderly resolution. Compare Yagman, 796 F.2d at 1183 (sanctions award of all defendant's fees and costs not a deterrent where award was made after trial was complete and the case was effectively over). Plaintiffs must be made to understand that they cannot continue the outrageous and abusive tactics exhibited in the past. Second, Plaintiffs cite no examples of the Defendants failing to mitigate the costs of this litigation. To the contrary, Defendants declarations indicate that they have worked together where possible to keep the

ORDER - 8

collective costs of their defense as minimal as possible under the circumstances. <u>See</u>, <u>e.g.</u>, Sullivan Decl., docket no. 705, at p. 4 (divided workload with Mr. Gibbs to avoid duplicate efforts). Finally, there is nothing to indicate that Plaintiffs are unable to pay an appropriate award of attorneys' fees and costs.

Given these considerations, the Court finds that Defendants' allocation of the excessive costs and fees incurred as a result of Plaintiffs' bad faith conduct represents a reasonable and conservative award of sanctions in this case. Further, the Court finds that the hours billed and hourly rates of all the various attorneys are reasonable. Notably, Plaintiffs offer no objection to the hourly rates. The Court awards the attorneys' fees and costs as follows.

1. <u>Sassan Sanai</u>

Based on identifiable instances of Plaintiffs' bad faith conduct, Mr. Sullivan calculates that he spent 191.2 hours responding to vexatious litigation tactics at an average billing rate of $207.00 per hour. This equates to a request for $39,578.00 in fees. Because Mr. Sullivan represented both Sassan Sanai and IMC, and there is no basis for proportioning his fees between those clients, the total sum must be divided equally. Accordingly, Sassan Sanai is awarded $19,789.00 in fees for Mr. Sullivan's work. Similarly, Mr. Gibbs calculates that he billed $86,987.00 during his representation of Sassan Sanai and Mary McCullough. Mr. Gibbs further estimates that 50% of that amount was the result of vexatious and multiplicative litigation tactics by the Plaintiffs. While this estimate is not outlandish, the Court finds that 35% represents a more accurate approximation, equaling $30,445.00. As with Mr. Sullivan's fees, Sassan Sanai is awarded half of Mr. Gibbs' fees, totaling $15,222.00, because Mr. Gibbs also represented Mary McCullough. Finally, Sassan Sanai is awarded $21,757.00 based on Mr. Ziontz's calculation that he and his paralegal have billed that sum as a result of Plaintiffs' excessive litigation tactics. In total, Sassan Sanai is awarded $56,768.00.

ORDER - 9

### 2. Mary McCullough

As with Sassan Sanai, Mary McCullough is awarded half of Mr. Gibbs' fees ($15,222.00). Additionally, Mary McCullough is awarded $31,408.00, which was billed by the firm of Merrick Hofstedt & Lindsey as the result of specific instances of Plaintiffs' bad faith conduct. It total, Mary McCullough is awarded $46,630.00.

### 3. IMC

As with Sassan Sanai, IMC is awarded half of Mr. Sullivan's fees ($19,789.00). Additionally, IMC has been billed $83,864.00 by the firm of Todd & Wakefield. The Court finds that IMC is entitled to 50% of that sum, equaling $41,932.00, because Todd & Wakefield began its representation at a point in the litigation when Plaintiffs knew or should have known that there was no basis to proceed against IMC. In total, IMC is awarded $61,721.00.

### 4. Sullivan and MMPSM

Mr. Sullivan calculates spending 94.8 hours defending himself and MMPSM in this case. Mr. Sullivan's average billing rate during this period was approximately $215.00 per hour. Mr. Sullivan's time and rate equates to $20,382.00 in fees attributable to this litigation. Mr. Sullivan and MMPSM are entitled to all of this sum as the Court finds that Plaintiffs' pursuit of their claims against Mr. Sullivan individually and MMPSM as a firm were without merit and directly motivated by a desire to increase the Defendants' costs. Additionally, the firm of Lee Smart billed Mr. Sullivan and MMPSM a total of $117,249.00 in attorneys' fees and costs. The Court finds that Mr. Sullivan and MMPSM are entitled to 75% of this sum, equaling $87,936.00. In total, Mr. Sullivan and MMPSM are awarded $108,318.00

## CONCLUSION

ORDER - 10

For the foregoing reasons, the Court awards costs and attorneys' fees pursuant to 28 U.S.C. § 1927 as follows:

(1) Defendant Sassan Sanai is awarded $56,768.00 in sanctions. The sanctions should be paid within 10 days of this Order. The Clerk is directed to enter a supplemental judgment in favor of Sassan Sanai for $56,768.00 against Plaintiffs Cyrus Sanai, Fredric Sanai, and Viveca Sanai.

(2) Defendant Mary McCullough is awarded $46,630.00 in sanctions. The sanctions should be paid within 10 days of this Order. The Clerk is directed to enter a supplemental judgment in favor of Mary McCullough for $46,630.00 against Plaintiffs Cyrus Sanai, Fredric Sanai, and Viveca Sanai.

(3) Defendant Internal Medicine & Cardiology, Inc., is awarded $61,721.00 in sanctions. The sanctions should be paid within 10 days of this Order. The Clerk is directed to enter a supplemental judgment in favor of Internal Medicine & Cardiology, Inc., for $61,721.00 against Plaintiffs Cyrus Sanai, Fredric Sanai, and Viveca Sanai.

(4) Defendants William Sullivan and Marsh Mundorf Pratt Sullivan & McKenzie, P.S.C., are awarded $108,318.00 in sanctions. The sanctions should be paid within 10 days of this Order. The Clerk is directed to enter a supplemental judgment in favor of William Sullivan and Marsh Mundorf Pratt Sullivan & McKenzie, P.S.C., for $108,318.00 against Plaintiffs Cyrus Sanai, Fredric Sanai, and Viveca Sanai.

IT IS SO ORDERED.

DATED this 4th of November, 2005.

Thomas S. Zilly
United States District Judge

ORDER - 11